A00A2384. SPANN v. THE STATE.
A00A2385. TURNER v. THE STATE.
(546 SE2d 368)

POPE, Presiding Judge.

Demetrius Spann and Anthony Turner were charged with aggravated assault, were tried as co-defendants, and were both convicted. Here, they appeal raising identical arguments. For the following reasons, we affirm.

Evidence at trial showed that on September 19, 1998, the victim, Cedric Stringer, and his best friend, Cedric McLendon were at a club in Blakely. The men saw Spann, Turner, and a third co-defendant, Adrian Walker, and a fight ensued.

The next night, Stringer and McLendon went to the home of a friend, Willie Gene Davis. While they were at his residence, Spann and Turner drove by outside, yelling various obscenities. Eventually Spann and Turner got out of the vehicle, carrying guns, and started toward Davis' residence. At this point, Turner was carrying a handgun, and Spann was carrying a shotgun. When McLendon saw the guns, he ran inside the house. McLendon watched from inside the house as shots were fired at Stringer.

Stringer ran behind the trailer and down an alley where he saw his friend, Oliver Mallard. Stringer was hysterical and asked Mallard to take him to Blakely, because someone was chasing him. Mallard took Stringer to the police station. Stringer entered the police station where he asked the emergency medical technician on duty to hide him because someone was trying to shoot him. The emergency

technician saw blood on Stringer's neck and determined that it was coming from an injury on top of his head. Under the injured area she felt a small, round object like a small BB shot.

There was also testimony that police officer Robert Grier responded to a call about the shooting at about 1:00 a.m. Within 30 minutes he began taking statements from various witnesses who wrote out their own statements. Officer Grier got statements from six witnesses: Willie Gene Davis, Travis Williams, Lavon McKenzie, Darryl Davis, McLendon, and Stringer. The statements, in varying manners, identified Turner and Spann as the two people who shot the handgun and shotgun at Stringer and other people. There was also evidence that the shell casings which were found at the scene were fired by a handgun and shotgun which were found in the home of an acquaintance of the defendants.

1. Spann and Turner argue that the trial court erred in allowing the State to introduce the six written statements of the State's witnesses. At trial, each of the six witnesses who had given statements to the police on the night of the crime testified. The court allowed the statement of each witness to be introduced into evidence. Here defendants claim that the admission of these statements was error.

The defendants' arguments lack merit. In *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982), the Supreme Court held that "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination" is admissible both to impeach the witness and as substantive evidence.

In *Duckworth v. State*, 268 Ga. 566 (1) (492 SE2d 201) (1997), our Supreme Court set forth the three requirements for impeaching a witness with a prior inconsistent statement: "First, the prior statement must contradict or be inconsistent with the witness's in-court testimony; second, the prior statement must be relevant to the case; and, third, the examining attorney must lay the proper foundation with the witness." (Citation omitted.) Id. at 567 (1). The requirements set forth above were met in this case. See also *Holiday v. State*, 272 Ga. 779 (534 SE2d 411) (2000); *Adams v. State*, 174 Ga. App. 558, 559 (2) (331 SE2d 29) (1985).

With three of the witnesses' statements at issue, the witness testified that part of his earlier statement was not true. Thus, in these instances, the prior statement was inconsistent in many material respects with the witnesses' in-court testimony, and the court did not err in admitting the prior statements. See *Brown v. State*, 266 Ga. 723, 724-725 (2) (470 SE2d 652) (1996); OCGA § 24-9-83. Furthermore, contrary to defendants' argument that the proper foundation was not laid for the admission of one of the three statements, that of Darryl Davis, we find no harmful error in the court's decision in this respect. See *Meschino v. State*, 259 Ga. 611, 613-614 (2) (385 SE2d

281) (1989).

In the three other instances, the witness could not remember an aspect of the events about which he had previously given the statement. In fact, two of the witnesses could not remember any aspect of giving the prior statements. Citing *Barksdale v. State*, 265 Ga. 9, 11-12 (2) (a) (453 SE2d 2) (1995), and *Johnson v. State*, 255 Ga. 552, 555-556 (4) (a) (341 SE2d 220) (1986), defendants argue that these witnesses did not remember the events or giving the statements and that the statements were inadmissible because they were not inconsistent with the in-court testimony of these witnesses.

Contrary to defendants' arguments, *Johnson v. State*, 255 Ga. 552, does not support their position. In that case, the Supreme Court addressed the issue of whether a witness who testified that he could not remember certain events could be impeached by a prior inconsistent statement which was contained in his application for bond. In *Johnson*, there was no evidence that the defendant even made the prior statement: the attorney for the witness had filed the application for bond, and there was no evidence that the witness approved the wording of the document. The *Johnson* court determined that the document was inadmissible.

Defendants rely on the following language from *Johnson v. State*: "Furthermore, 'where a witness merely states that he does not remember, he cannot be impeached by the showing of former statements with respect to the facts which he claims not to remember. . . .' 98 CJS 559, Witnesses, § 583." Id. at 556. But, given the distinguishable facts of the instant case, this statement does not control here. We note that the circumstances of this case are more similar to those presented in *Brown v. State*, 266 Ga. at 725 (2), in which our Supreme Court determined that the prior inconsistent statement of a witness suffering from memory loss was admissible. Specifically, the court found that the concerns of the Sixth Amendment are satisfied if a defendant is given the opportunity to cross-examine a forgetful witness about his bias, his lack of care and attentiveness, and even the very fact that he has a bad memory. See also *United States v. Owens*, 484 U. S. 554, 560 (108 SC 838, 98 LE2d 951) (1988); *Holiday v. State*, 272 Ga. 779.

Similarly, the situation presented in *Barksdale v. State*, 265 Ga. at 10-12 (2) (a), differed significantly from that presented in the instant case. In *Barksdale*, the witness who made the prior inconsistent statement refused to testify at trial, yet the trial court admitted the prior statement. In reversing the trial court, the *Barksdale* court determined that because the witness refused to answer *any* questions and thus gave no testimony in court with which the prior statement was inconsistent, the statement was inadmissible. Id. at 11.

In the case before us, each of the three witnesses who suffered

memory loss took the stand and testified. It is obvious from the transcript that these three witnesses, as well as the other three who equivocated regarding their statements, were reluctant to testify against defendants.

> Under such circumstances it was proper to allow the State to introduce prior inconsistent statements as substantive evidence. *Gibbons*, supra. As stated in *Gibbons*, "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes." [Id. at 862.]

*Adams v. State*, 174 Ga. App. at 559 (2). See also *Waycaster v. State*, 136 Ga. 95, hn. 2 (70 SE 883) (1911); *Kirby v. State*, 187 Ga. App. 88, 89 (1) (369 SE2d 274) (1988). We find no error.

2. Defendants argue that the evidence was insufficient to convict. We disagree and find that a rational trier of fact could find from the evidence adduced at trial proof of both defendants' guilt of aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Citing OCGA § 17-8-4, Spann and Turner contend that the court erred in not allowing the defense to have additional peremptory jury strikes for voir dire because there were three co-defendants. Contrary to this argument, we find nothing in the record to indicate that the trial court abused its discretion by failing to allow additional jury strikes for the defense. *Majors v. State*, 203 Ga. App. 139, 141 (4) (416 SE2d 156) (1992).

4. Defendants argue that the court erred in denying their motion for a mistrial when the State referred to one of the State's witnesses being "in custody on other matters." This argument lacks merit for several reasons, including that before the statement at issue the witness had testified that he was in prison. Additionally, after the State's assertion that the witness was in custody, the court instructed the jury to disregard this statement. There was no error.

*Judgments affirmed. Miller and Mikell, JJ., concur.*

DECIDED MARCH 5, 2001.

*Robert J. Pinnero*, for appellants.
*Charles M. Ferguson, District Attorney*, for appellee.